UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHADRICK J. WARTHEN,

                    Petitioner,

v.                                                      Case No:  5:14-cv-88-Oc-10PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

                    Respondents.
_____/

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Chadrick J. Warthen ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed February 5, 2014).  Petitioner, proceeding *pro se*, attacks the convictions and sentences entered against him by the Fifth Judicial Circuit Court in Lake County, Florida for robbery with a firearm and first degree murder with a firearm.  *Id.*  Respondents filed a response to the amended petition (Doc. 8). Petitioner filed a reply (Doc. 12), and the case is now ripe for review.

Petitioner raises two claims and three sub-claims in his petition.  He asserts that: (1) the trial court erred by denying his *ore tenus* motion to withdraw his nolo contendere plea; (2) trial counsel ("Counsel") was ineffective for failing to explain the exact meaning of a nolo contendere plea; (3) Counsel was ineffective for coercing Petitioner to accept the state's plea by telling him that his mother could be charged for perjury if Petitioner did not do so; and (4) Counsel was ineffective for failing to advise the Court that the

relationship between Petitioner and counsel had become adverse after Petitioner sought to withdraw his plea (Doc. 1 at 3-7).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.  Because the petition may be resolved on the basis of the record, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History[1]

On December 4, 2009, a grand jury returned an indictment charging Petitioner with robbery with a firearm, in violation of Florida Statute §§ 812.13(2)(a), 775.087(1), 775.087(2)(a)(1) and 777.011 (count one) and first degree murder with a firearm, in violation of Florida Statutes §§ 782.04(1)(a)(1), 775.087(2)(a)(1), 775.087(2)(a)(2) and 775.087(2)(a)(3) (count two) (App. A).   The State of Florida filed a notice of intent to seek the death penalty on February 16, 2010 (App. B).

On July 21, 2011, Petitioner signed a written plea agreement (Ex. E).  A plea colloquy was held the same day (Ex. F).   In return for Petitioner's entry of a nolo contendere plea, the State agreed to not seek the death penalty against Petitioner, to not prosecute Petitioner's mother for perjury, and to recommend that Petitioner be incarcerated close to Wildwood, Florida (Ex. E; Ex. F).   At the trial court's request, the state prosecutor recited a factual basis for the plea:

> Back on the date alleged in the indictment, the Defendant came to Lake County, armed with several pistols, revolvers actually, and got involved in a scheme with an acquaintance

---

[1] Citations to exhibits or appendices are to those file by Respondents on May 19, 2014 (Doc. 9).

of his named James Brown.  The two of them went to the scene where the shooting took place, which is here in Lake County, and they went there for the purpose of committing a robbery, and they discussed the robbery among themselves.

Mr. Wharthen here used his telephone on a number of occasions to talk to the intended victims of this robbery and actually gave them instructions on where they needed to go in order to get them to the scene.  He lied to them and told them he intended to sell them a gun.  That was the bait that was used in order to get the victims to come to that place.  But the intention of the Defendant and his accomplice, James Brown, was simply to rob them.

At some point during the process of phone calls, Mr. Warthen over here realized that he knew one of the victims, and that the victim and his family knew him, because, in fact, as fate would have it, the Defendant and his family are from Wildwood and so were the victim and his family, and they happened to know each other.  They'd met before on several occasions.

So the Defendant turned to his accomplice, Mr. Brown, and said, I don't think that we should rob these people, because if we rob them, he's going to know me, he's going to recognize me.  The only way that I will do this is if we're going to kill them. And at first Mr. Brown was opposed to that, then Mr. Brown thought about it a little bit more and said, let's do it.  At which point, the two gentlemen proceeded to do precisely what they had intended, they lured the vehicle in, Mr. Warthen over here flagged the vehicle down as they came to the parking lot.  At that point, Mr. Warthen, armed with a .38 revolver, walked up to the driver's side of the vehicle as Mr. Shawn Foster, the deceased, was getting out of the vehicle, he proceeded to shoot him a total of four times, at least once or twice while he was on the ground, shot him in the back of the head.

At the same time, Your Honor, the Defendant and his accomplice, Mr. Brown, took some of Mr. Foster's property, including his wallet and his cell phone.  Those are the facts that the State would prove had we gone to trial.

As far as the perjury charge, Ms. Warthen, the mother, agreed to come to court and speak on her son's behalf, and last – I don't know what day it was.  The 18th, I guess it was Monday, Ms. Warthen came, under oath, before us, and during questioning in a deposition said that her son was with her at

> the time of the event.  Not true.  We're able to prove that that's not true.  She was lying to us.  We have agreed, and I want Mr. Warthen to understand, because I'm a man of my word, we're bound by this agreement, Mr. Warthen, we will not prosecute your mom for trying to help you out and make up that story.
>
> Nothing else, Your Honor, thank you.

(App. F at 8-10).  The trial court found a factual basis for the plea.  *Id.* at 10.  The court determined that Petitioner was competent and that his plea was made freely and voluntarily and accepted his plea of no contest.  *Id.* at 11.

A sentencing hearing was held on July 26, 2011 (App. G).  At the hearing, Petitioner made an *ore tenus* motion to withdraw his plea, arguing that he felt coerced into entering it.  *Id.* The trial court concluded that the plea had been entered into voluntarily and denied Petitioner's request to withdraw his plea.  *Id.* at 7; App. I (written order denying Petitioner's motion to withdraw his plea). Petitioner sought to fire his defense attorneys, but the trial court concluded that the attorneys had not been ineffective and declined to dismiss them and appoint new counsel.  *Id.* at 9.  Petitioner indicated that he would like to represent himself.  *Id.* at 9.  The court conducted a *Faretta*[2] inquiry, but Petitioner told the court that he only wanted to fire the attorneys if he could withdraw his plea.  *Id.* at 14. The court told Petitioner that he had already ruled on that, and proceeded to sentencing.  *Id.* Petitioner was sentenced to life in prison with a minimum mandatory sentence of twenty-five years on count one and to life in prison without the possibility of parole on count two.  *Id.* at 20.

---

[2] *Faretta v. California*, 422 U.S. 806 (1975) (criminal defendants have a constitutional right to refuse counsel and represent themselves in state criminal proceedings).

Petitioner appealed to Florida's Fifth District Court of Appeal, and his appellate counsel filed an *Anders*[3] brief raising the sole claim that the trial court's denial of Petitioner's motion to withdraw his nolo contendere plea was in error (App. J).  Thereafter, Petitioner filed a *pro se* brief challenging the trial court's denial of his motion to withdraw his plea (App. M).  The appellate court affirmed Petitioner's convictions and sentences on June 12, 2012 (App. O); *Warthen v. State*, 90 So. 3d 304 (Fla. 5th DCA 2012) (per curiam).

On December 2, 2012, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, raising two claims of ineffective assistance of counsel ("Rule 3.850 motion") (App. R).  The post-conviction court denied the claims, and Florida's Fifth District Court of Appeal affirmed (App. A; App. V); *Wharthen v. State*, 118 So. 3d 815 (Fla. 5th DCA 2013) (per curiam).

Petitioner filed the instant petition on January 30, 2014 (Doc. 1).

## II.   Governing Legal Principles

### A.   Standard of Review

Pursuant to 28 U.S.C. §§ 2254(d)(1) and (2), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3] *Anders v. California*, 386 U.S. 738 (1967) (appellate counsel seeking to withdraw must outline the case and any potential grounds for appeal).

5

This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme

6

Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).  Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

## B.      Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.  *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).

Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In the context of a plea, the first prong of *Strickland* requires that a petitioner show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). The second prong requires that the petitioner show a reasonable probability that, but for counsel's errors, he would have entered a different plea. *Id.*

### C.      Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.  Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. *Coleman v.*

*Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v.*

10

*United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   Analysis

### A.   Claim One

Petitioner asserts that the trial court abused its discretion when it denied his *ore tenus* motion to withdraw his nolo contendere plea (Doc. 1 at 3).  Specifically, he argues that he was coerced into entering the plea by his defense attorneys who "advis[ed] him that they couldn't do anything for him" and "us[ed] the fact the State would charge and convict his mother with perjury if he didn't take the plea." *Id.* at 4.  Petitioner also argues that "he misunderstood what the plea entry meant." *Id.* Petitioner raised this claim on direct appeal where it was denied by Florida's Fifth District Court of Appeal (App. M; App. O).

Respondents urge that Claim One is subject to summary dismissal because it involves only an alleged violation of state law, and therefore, it is not cognizable on federal habeas review (Doc. 8 at 9, 11).  Indeed, a review of Petitioner's brief on appeal shows that he framed his claim and argument in terms of state law only without making reference to the United States Constitution, federal law, or even federal cases (App. M).[4]  To the extent Petitioner now asserts the trial court erred under Florida law when it denied his motion to withdraw his plea, such argument is not cognizable on federal habeas review.

---

[4] Notably, although Petitioner claims that he was denied due process by the trial court's error, the argument supporting the instant claim is also presented solely in terms of state law (Doc. 1; Doc. 12).

*Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Moreover, Petitioner's failure to apprise the state courts of the constitutional nature of this claim leaves it unexhausted on federal habeas review. 28 U.S.C. § 2254(b)(1). For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (emphasis added) (internal citations and quotations omitted). As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Reedman v. Thomas*, 305 F. App'x 544, 545 (11th Cir. 2008) (internal citation omitted). Because Petitioner did not refer to any "specific federal constitutional guarantee" in his brief on direct appeal, his due process challenge to the trial court's denial of his motion to withdraw was not fairly presented to the state court and is unexhausted. Petitioner does not satisfy (or even allege) the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim. Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P. 9.140(b)(3) (defendant

wishing to appeal a final judgment must do so within "30 days following rendition of a written order").  Consequently, Petitioner's claim cannot be considered by this Court and is due to be dismissed.

Even assuming *arguendo* that Petitioner raises a properly pleaded and exhausted due process claim, it is without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  On habeas review, the standard for determining the validity of a plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The Eleventh Circuit explained the standard for federal review of state court guilty pleas as follows:

> A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.

*Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991).   Under the *Stano* standard, Petitioner has not demonstrated entitlement to relief.

Petitioner has not shown that any external factors affected his decision to enter a nolo contendere plea.  He signed a plea agreement stating that no one had "used any threats, force, pressure, or intimidation" to induce him to make the plea (App. E at 3). During the plea colloquy, Petitioner agreed that no one had forced, threatened, or coerced him to plead nolo contendere (App. F at 6).   The state court questioned Petitioner to determine whether he was competent to plead nolo contendere. *Id.* at 5-7, 10-11.  The rights Petitioner waived by pleading were explained in detail. *Id.* at 4-5.  Petitioner told the

trial court that he understood he was waiving any defenses he had to the charges and that he was waiving his right to a jury trial. *Id.* at 6; *see* discussion *infra* Claim II(B)(1).

Petitioner does not now assert that he lied to the court at the plea colloquy; rather, he claims that he entered a plea because Counsel told him that he would likely be found guilty at trial (and subject to the death penalty) and because he was afraid the state would prosecute his mother for perjury. This is insufficient to demonstrate coercion. The United States Supreme Court has specifically refused to hold "that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady v. United States*, 397 U.S. 742, 751 (1970); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' ") (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)); *Alford*, 400 U.S. at 31 (recognizing that a plea is not involuntary solely because a defendant pleads guilty out of a desire to limit the possible penalty).

Likewise, Petitioner's assertion that he pleaded guilty because he was afraid the state would prosecute his mother for perjury does not render his plea involuntary. The Eleventh Circuit has observed:

> Where the defendant alleges that his guilty plea was induced by government threats to prosecute a third party and the government makes no effort to specifically deny that it made the threats, the defendant's prior attestation of voluntariness

> is not an absolute bar to his subsequent claim that he pleaded guilty only to protect the third party. Rather, the guilty plea merely imposes upon the defendant a heavy burden to establish that the government did not observe a "high standard of good faith" based upon probable cause to believe that the third party had committed a crime. *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979).

*Martin v. Kemp*, 760 F.2d 1244, 1247-48 (11th Cr. 1985).  Petitioner does not argue that the government's threats to prosecute his mother for perjury were not made in good faith. Nor does he assert that there was no probable cause to believe she had committed a crime.  To the contrary, Petitioner admits in the instant petition that "Mrs. Warthen made statements in deposition and to the Police at some time close to the date of the crimes, which statements provided her son with an alibi, but were later proved to be untruthful." (Doc. 1 at 4 n.1).  Under the rationale of *Martin*, the state's threat to prosecute Mrs. Wharten for perjury did not constitute coercion. The fact that Petitioner chose to enter a no contest plea in order to protect his mother does not undermine the voluntariness of his plea.

The record before this Court shows a voluntary plea.  There is no indication that the state court's decision to deny Petitioner's motion to withdraw his plea is at odds with any United States Supreme Court case with "materially indistinguishable facts."  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  Moreover, the state appellate court's rejection of this claim was reasonably justified in light of the evidence presented in the state court proceedings.  Accordingly, Claim One is denied pursuant to 28 U.S.C. § 2254(d).

### B. Claim Two

Petitioner asserts that Counsel was ineffective for: (1) failing to explain the exact meaning of a nolo contendere plea to Petitioner; (2) coercing Petitioner to accept the state's plea offer by telling him that his mother could be charged for perjury if he did not

do so; and (3) failing to advise the Court that the relationship between Petitioner and counsel had become adverse after Petitioner sought to withdraw his plea (Doc. 1 at 7). Petitioner raised these claims in his Rule 3.850 motion, and the trial court determined that Petitioner could demonstrate neither deficient performance nor resulting prejudice (App. S). Florida's Fifth District Court of Appeal affirmed (App. V).   A review of each alleged deficiency supports the state courts' conclusions.

### 1.    A nolo contendere plea is not identical to a guilty plea

Petitioner accuses Counsel of misadvising him by telling him that if he pleaded nolo contendere, he would not be pleading guilty (Doc. 1 at 6).  He explains:

> Petitioner avers that after the plea entry, a paralegal explained to him that a nolo contendere plea was the equivalent of a guilty plea, and ultimately meant he would be admitting he committed everything the State alleged in the Information.  A couple days later petitioner read an article in the local [newspaper] that portrayed his plea entry as a confession of guilt.
>
> When Petitioner confronted counsel about what he had learned about the meaning of his plea and what it mean, just minutes before the scheduled sentencing hearing, Counsel confirmed that his plea entry did in fact amount to a confession of guilty.  But unless he went on with the scheduled hearing, it would mean the State was definitely going to charge and convict his mother, and he was going to death row.

*Id.* at 6-7.  In denying this portion of Claim Two, the post-conviction court noted that Counsel's performance could not be deficient because a nolo contendere plea is not the same as a guilty plea (App. S at 3).

It is not clear what Petitioner thought a nolo contendere plea meant and how he was "misadvised" by Counsel in this regard.  To the extent Petitioner asserts that he believed a nolo contendere plea would not result in a conviction and would not subject

him to punishment, the assertion is belied by his exchange with the state court during his

colloquy:

> Q.    Mr. Warthen, do you understand that by entering this plea, you're waiving your right to continue on to a trial by jury or a trial before this Court; waiving your right to be represented by an attorney at that trial; waiving your right to confront and cross-examine any witnesses that are called against you; waiving your right to subpoena and have witnesses testify on your own behalf; waiving your right to testify yourself or to remain silent, and if you chose to remain silent, waiving your right to have this Court instruct the jury to disregard that silence as any evidence of guilt; waiving your right to have the State prove each charge, each element of each charge beyond and to the exclusion of every reasonable doubt before you could be found guilty of that particular charge; and waiving your right to appeal except by appropriate collateral attack; do you understand all those rights that you're waiving by entering this plea?
>
> A.    Yes, sir.
>
> Q.    Do you also understand that you're waiving any defenses that you now believe that you might have to either of these charges?
>
> A.    Yes, sir.
>
> Q.    And do you understand that there will be no further discovery, no further investigation into this case; do you understand that?
>
> A.    Yes, sir.
>
> . . .
>
> Q.    And as your attorney has said, do you understand that the, that the sentence will be life, and in Florida, life means that you will not be released from the Department of Corrections during your lifetime?
>
> A.    Yes, sir.
>
> Q.    And do you understand that there is technically a 25 year minimum mandatory that the Court has to impose, but it will be, you know, part of the life sentence; do you understand that?

> A.     Yes, sir.
>
> Q.     Are you entering your plea of no contest because you
>        believe that to be in your best interest?
>
> A.     Yes, sir.

(Ex. F at 5-7).  Given that Petitioner understood he would be convicted and sentenced to life in prison upon the entry of his nolo contendere plea, he cannot now credibly assert that he believed his nolo contendere plea would not subject him to the same consequences as a guilty plea.

To the extent Petitioner urges that there is absolutely no difference between a guilty plea and a nolo contendere plea, he is mistaken. The Florida Supreme Court has recognized that "[a] plea of nolo contendere does not admit the allegations of the charge in a technical sense but only says that the defendant does not choose to defend . . . It is merely a formal declaration that the accused will not contest the charges with the prosecutor and is in the nature of a compromise between the state and the accused." *Vinson v. State*, 345 So. 2d 711, 715 (Fla. 1977). The *Vinson* court further explains that "[a] plea of nolo contendere has been determined to be equivalent to a guilty plea only insofar as it gives the court the power to punish." *Id.*

Although the effects of a guilty plea and a nolo contendere plea are equivalent in the context of a defendant's punishment, the pleas are clearly not identical.  It is irrelevant that Petitioner read a newspaper article that mischaracterized his plea agreement as an admission of guilt or that he was ill-advised by a paralegal on the definition of the pleas. Given the clear law on this issue, the post-conviction court did not unreasonably conclude that Counsel did not misadvise Petitioner by telling him that he would not be pleading

guilty if he entered a nolo contendere plea to the charges (App. S at 3).  Petitioner is not entitled to federal habeas corpus relief on this claim.

> **2.     Counsel did not engage in unreasonably coercive conduct by encouraging Petitioner to enter a nolo contendere plea to spare his mother from prosecution**

Petitioner argues that, "[e]ven considering the fact that the State could have charged his Mom with the untruthful statements to law enforcement, Counsel rendered ineffective assistance where Counsel repeatedly used that fact as coercion tactic to persuade Petitioner to accept the State's plea deal[.]" (Doc. 1 at 7).  When Petitioner sought to withdraw his plea at the sentencing hearing, he told the court that Counsel had coerced him into taking the life sentence (App. G at 8).  Counsel was allowed to address the court on that issue:

> You Honor, if I may, as lead counsel for the Defense, we have done no coercion and all we have done is give our opinion of what the evidence showed and what we think is in the best interest of our client.  We do that in every case.  As I told Mr. Warthen in his previous motion, if I get in the courtroom and we're in a trial, I'm going to try my best to get him found not guilty, but I have to tell him before my assessment of the case and what it's looking like to me.  Now, I've never said anything about Mr. Warthen being involved in a robbery or murder.  I've said what I think the facts are showing and the problems that we have with past statements that he has made.  That's all there has been.  And Your Honor went through the question of coercion.  We haven't twisted any arms.  We've simply given our opinion.  As lawyers, we're required to do that.  That's part of our responsibilities under the code of ethics of the Florida Bar.

(App. G at 9).  After Counsel's statement, the sentencing court concluded that counsel had not been ineffective and declined to appoint new counsel *Id.* at 10.  In its order denying this claim, the post-conviction court noted that "defense counsel's statements during the sentencing hearing refute any accusation of coercion." (App. S at 3-4).

In rejecting this claim, the post-conviction court found that Counsel had not coerced Petitioner into pleading guilty.  By so doing, the court inevitably concluded that defense counsel was a more credible witness than Petitioner.  Petitioner has not shown by clear and convincing evidence that this conclusion was unreasonable.  *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (questions of credibility and demeanor of a witness is a question of fact); 28 U.S.C. § 2254(e)(1)(a determination of a factual issue made by a State court shall be presumed correct unless rebutted by clear and convincing evidence); *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while a reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review).

Moreover, defense counsel is not incompetent merely because he or she advises a client of the strength of the state's evidence and cautions him that the state is prepared to prosecute a third-party in the absence of a plea.  To the contrary, the Supreme Court requires Counsel to do so:

> In the face of unavoidable uncertainty, the defendant and his counsel **must** make their best judgment as to the weight of the State's case. Counsel **must** predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.

*McMann v. Richardson*, 397 U.S. 759, 769-70 (1970) (emphasis added).  Petitioner faced the death penalty for his crimes, and his mother faced prosecution for perjury; reasonable competent counsel could have urged Petitioner to enter a plea which eliminated the possibility of execution and ensured that his mother would not be prosecuted.  In fact,

20

reasonable, competent counsel could have concluded that he was constitutionally required to do so.  *See Nicholls v. Bigelow*, 558 F. App'x 778, 786-87 (10th Cir. 2014) ("[P]resenting the brutal facts to a client is the job of counsel; it is not coercion. The gist of [the petitioner's] claim appears to be only that his counsel strongly urged him to plead guilty. But this is proper conduct by an attorney if he believes that a plea is the best course.").

Finally, Petitioner specifically told the trial court, both in his signed plea agreement and during the plea colloquy, that nobody had threatened or pressured him to enter the plea (App. E at 3; App. F at 6).  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v.* Allison, 431 U.S. 63, 74 (1977).  "[R]epresentations of the defendant . . . at [plea] hearing[s] . . . constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73-74.  Petitioner has not surmounted that barrier.  The state courts reasonably concluded that Counsel was not ineffective for encouraging Petitioner to enter a nolo contendere plea to avoid the death penalty and to spare his mother from prosecution for perjury.  Petitioner is not entitled to federal habeas corpus relief on this claim.

**3.    Counsel was not ineffective for failing to advise the trial court that the relationship between Petitioner and Counsel had become "adverse"**

Petitioner argues that Counsel had the duty to advise the Court that their relationship became adverse "just minutes before the scheduled sentencing hearing." (Doc. 1 at 6).  Petitioner asserts that he confronted Counsel about "what he had learned about the meaning of his plea and what it meant" and that "Counsel became defensive and tried to justify his and the other attorney's coercion tactics when addressing the Court."  *Id.* at 6-7.  "It is at this point . . . that [Petitioner's and Counsel's] relationship

21

became adverse and that Counsel owed the Petitioner the duty to [so] advise the Court."
*Id.*at 7.   The post-conviction court denied this claim on the ground that Petitioner had demonstrated neither deficient performance nor resulting prejudice.   Specifically, the post-conviction court noted that any assertion that Petitioner's motion to withdraw his plea would have been granted absent Counsel's alleged deficiency was "pure speculation." (App. S at 3).

It is unnecessary for this Court to consider Counsel's performance on this issue, because Petitioner cannot demonstrate *Strickland* prejudice.   First, the sentencing court was already well aware of Petitioner's dissatisfaction with Counsel, and this was addressed during the sentencing hearing.   Counsel told the sentencing court that Petitioner had informed him that he no longer wished to plead nolo contendere (App. G at 3).   The trial court conducted the following colloquy:

Q.   Mr. Warthen, do you have anything you'd like to present to the Court –

A.   Yes, sir.

Q.   -- before sentencing?

A.   Yes, sir.

Q.   Go ahead.

A.   I ain't going to go through with that, sir.  I'm not going to accept that.  I, for one, I ain't killed nobody.  So, therefore, me signing this plea is saying that I killed Mr. Shawn Foster, when I didn't kill Mr. Shawn Foster.  Therefore, then reading the newspaper, you put in there, I escape death.  Therefore, I lay down at night, I ain't killed nobody, so I don't feel like, you know, if I get a life sentence or death, I prefer get it fighting for my life.   For me to sign something saying that, that's basically saying that I killed someone, when I didn't kill him. So I'm not, I'm not going – I'm going to trial.

22

(App. G at 3-4).   Counsel explained to Petitioner that he (Petitioner) had entered a no contest plea, not a guilty plea, but Petitioner responded that it was "basically" the same thing. *Id.* at 4.   The state presented argument to the court on why Petitioner should not be permitted to withdraw his plea. *Id.* at 4-6.   Petitioner was allowed to respond to the state's argument:

> Well, for one, I'm just in there and talking with my attorney and, like I said, I advised that I didn't have take [sic] place in no robbery, no murder that occurred, like I said.  My attorney said, yes, I did.  Like I said, That's why I put in the motion to dismiss counsel, probably about two, three, weeks ago, like I said, before I was still going to trial, and I done had my attorneys sitting there, you know, in a group and basically like just putting in my head that I take this life sentence, it's best for me.  So, therefore, I got my attorneys telling me this, this is my mouth for me in the Court of law, this is my mouth, this who talk for me, so if I don't got nobody who can talk for me, then what else I have to do?

> Then that come up about my mom, that's basically like I didn't want to my mom to get in no trouble neither. That's why really I put in consideration, but like I said, I want to fire my attorneys too.  I feel like I go better alone, sit here and have someone talking in my head about accepting a life sentence, so I want to fire my attorneys too.

*Id.* at 6-7.  The court denied Petitioner's motion to withdraw because the plea had been entered freely and voluntarily, and told Petitioner that he took the alleged coercion by Counsel into consideration when making the ruling. *Id.* at 7.  The court further determined that Counsel was not ineffective and declined to appoint new counsel. *Id.* at 9.  Next, even had Counsel told the state court that his relationship "became adverse" at the time advanced by Petitioner, this was *after* the state court had already denied Petitioner's motion to withdraw his plea.  Accordingly, Counsel's acknowledgment of adversity at that time could not have affected the state court's ruling on this issue.

23

The state court's conclusion that Petitioner could not demonstrate prejudice from Counsel's failure to apprise the sentencing court of his adverse relationship with Petitioner was neither contrary to, nor an unreasonable application of, *Strickland*.  Nor was it based upon an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas corpus relief on this claim.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   <u>Certificate of Appealability</u>[5]

Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

---

[5] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.* As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

## V.     <u>Conclusion</u>

Based on the reasons set forth in this Order, Petitioner's 28 U.S.C. § 2254 petition is **DENIED with prejudice.**  Petitioner is denied a certificate of appealability.  The Clerk of Court is directed to terminate any pending motions, close the file, and enter judgment accordingly.

**DONE** and **ORDERED** in Ocala, Florida on July 5th, 2016.

UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies to: Chadrick J. Warthen
Counsel of Record